Good morning, Your Honors. My name is Robert Coffin. I am the attorney for the plaintiff in the underlying case and the appellant in this case. These issues have been extensively briefed. The central issue in my case is whether the trial court committed reversible error in essentially ignoring the application of the Supreme Court of California's ruling in the Telepon case, which essentially says, in California, if a person pleads guilty, they are acquitted. And in the subsequent civil action, that issue comes in not in any preclusive way, but the person who pled guilty in this civil case is entitled to explain to the trier of fact why he or she pled guilty. And essentially, what the Supreme Court has done is to give litigants an opportunity to explain what hesitancies existed to cause them to plead guilty and let the trier of fact determine what effect to give to that guilty plea. The district court in this case, Judge Napoleon Jones, essentially grabbed that guilty plea and said, well, he pled guilty in the case. He applied a preclusive effect. He didn't consider this to be an admission. He did not give us any latitude in that regard. He cut the case off before we ever saw the trier of fact. And when he did that, he ignored the Supreme Court ruling in Telebon, which was recently, in 2001, reaffirmed. It's been good law for decades in this jurisdiction. Under the Erie Doctrine, Judge Jones was required to apply that case, apply that body of law, and he did not. If we agreed with you, what do we do next? I mean, that is, there are still other arguments with regard to the sufficiency of the pleading. And I'm curious in particular as to why you seem to have pled a negligence claim and a negligence misrepresentation claim. And the negligence claim seems to be a difficult and hard one, and the negligence misrepresentation one perhaps less so. What's the difference between them, and why do you need both of them? What is the negligence claim other than a negligence misrepresentation claim? Well, it's probably one and the same, but in California, negligence misrepresentation claim carries with it the aspect of fraud. I mean, it's classified as that. And that's why practitioners usually plead both, negligence and negligent misrepresentation, because with the negligent misrepresentation, you pick up a fraud element. All right. But in this instance, that's what your allegation is. You don't have any other negligence other than the claim that there was a misstatement made that you were lying. I mean, basically, your cause of action has to encompass the elements of negligent misrepresentation or it doesn't exist. I'm just trying to clarify that, because there seem to be two different analyses, and I don't know why we need to get into both. Well, there may be some redundancy here, Your Honor, but as a matter of caution, most practitioners include both. You never know how it's going to go when you get before a jury. You never know how it's going to go when you get before a judge. So going into it, you put in as much as you can. The negligence here and the negligent misrepresentation arises out of the same set of facts. Namely, this person, on behalf of Popular Science Magazine, was telling Mr. Tabo that it's perfectly legal to advertise and to sell these discramblers, and that their legal department had researched this. It is, isn't it? So that's the underlying fact. It is legal to manufacture and sell discramblers, isn't it? Is it? Is it not? I believe it is, Your Honor. You believe what is? That it is legal or it is always illegal? I don't think it's always illegal. I think that there's a variety of different circumstances where they're perfectly legal. And I should point out that I'm not. So if somebody wants to put an ad in a magazine that says, I want to sell, I want to sell discramblers, and it's especially a little, little teeny thing that says discramblers for sale, and says, is it legal to sell discramblers? And somebody says, yes. Where is the fraud or the negligence? Well, under these circumstances, the fraud and the negligence arises from the fact that these, Time Warner or Popular Science knew or should have known that their counterpart was running around the United States getting people indicted who were selling these discramblers. Not when they were selling, not because they were selling discramblers, but because they were illegally selling these scramblers. Well, we don't. That is to say, discramblers which were designed to be or were sold to be used for illegal purposes. Now, I don't see anything in your pleading that you told them, these are going to be illegally modified discramblers and or I'm going to sell them for illegal purposes. Was there anything in your pleading about that? Your Honor, I don't believe that there's anything specifically that says that in the pleading. Well, then what is wrong if you said to me, can somebody legally sell a discrambler? And my answer is yes. What's wrong with my answer? It's an incomplete answer, because at the time Yes, unless you do it illegally. Well, the incomplete answer stems from the fact that the popular science and its lawyers knew or should have known that everybody who was advertising was subject to being indicted because Time Warner, a related entity, was going around getting the United States attorneys to go out and arrest these people and to prosecute. On the basis that they were that they were selling them illegally. That is to say they were the discrambler was illegally modified from what it ought to have been. And or they were telling people the sellers were telling people it's for an illegal purpose. Now, it may be technical, but I'm asking you, I don't see anything in the pleading that says you told them, I'm going to do it for an illegal purpose or it's been illegally modified. So I'm having a hard time, even if you ask the lawyer a simple question, how it becomes negligence to say, yes, these scramblers are legal. They can be legally sold. Well, Your Honor, it's a little difficult at this stage of my case to take what you're asking and say, you know, that these other cases involved certain peculiarities that are not in my case. I don't know what those other cases involved that the information there is simply not sufficient. Well, if you read our cases, the cases specifically say that these scramblers are legal and selling them is legal. And there's nothing illegal about selling to scramblers. We've got Ninth Circuit authority on that. So my question to you is, how do you spell negligence? If you ask somebody, can I put a little ad in there that says I have the scramblers for sale, a little teeny ad that says the scramblers for sale, and you say, is that legal? Yeah, that's legal. What's wrong with that answer? Well, Your Honor, I think I say in my complaint, I allege sufficiently, I believe, to indicate that Mr. Table was doing essentially the same thing that the other people were doing in these other cases. He didn't know about those other cases. But popular science did. Now, popular science knew or should have known that people that were doing exactly what Mr. Table was doing were getting arrested, indicted, and prosecuted. Now, that information should have been conveyed to Mr. Table when he was asked. Then you're getting slightly beyond a misrepresentation clip, aren't you, or anything like that. Because you're saying that not only did they have an obligation not to make a factually true statement, but they had an obligation, not to make a factually untrue statement, but they had an obligation to give him complete advice. Yes, Your Honor. That's exactly what I'm saying. And is that the difference between a negligence claim and a negligent misrepresentation claim? In some respects, it is, Your Honor. They are essentially arguing that they had a duty of care to provide legal advice to a misrepresentative statement. No, they needed to tell them what they knew or should have known. And that is, if he went ahead and placed that ad in their magazine, that it is more likely than not that he was going to be arrested. And the question he asked was, is it legal? Is it legal? Yes. To advertise. And another question. I think you get different opinions on that, Your Honor, as to whether it's legal or not. I think prosecutors, I think there's prosecutors out there who will say that it's not legal to advertise. There are actually two different statutes involved, right? Yes. And our Ninth Circuit case is actually about the other one, the one that says that it can be legal to advertise scramblers. Does that make any difference? In other words, it's not the one that Mr. Sedlow was prosecuted under, but the other statute. Could that possibly make a difference as to the answer to the question? It did not make a difference in Mr. Table's case, Your Honor. He got arrested for doing something. Well, I'm saying the opposite. We have a Ninth Circuit case saying it can be legal to sell to scramblers, but they're talking about under a different statute, not this one. So I'm asking you whether it makes any difference that this statute, whether the answer might be the other one. You know, I don't know the answer to that question, Judge, but what I would like to focus on is the fact that Mr. Table got arrested and he got thrown in prison for doing what he thought was an illegal act because he had been told so by Time Warner, by Popular Science. Had he known that there were people being arrested for doing what he was doing, had they given him full disclosure, had they told them what they knew or should have known, he would not have done that. He cannot control what the U.S. attorney is going to do. Now, listen. We've got your argument well in hand. Yes, sir. You've gone over your time. All right, sir. Thank you very much. Thank you. I appreciate Your Honor's attention. The time is 10 minutes per side. All right. Good morning, Your Honors. My name is Carrie Lyon Grossman, and I represent the appellees. This is a simple case that can be resolved on a motion for judgment on the pleadings. Plaintiff has a right to decide. Well, first of all, was it resolved in a motion for a judgment on the pleadings?  And I assume what we need to do here is simply disregard all the extra pleading information and what the plaintiff said, right? Although he did not do that. You can do that. Because we brought this as a motion for judgment on the pleadings, the review is de novo, and you can affirm the decision on any ground that's contained in the record. For a motion for judgment on the pleadings, we can consider the allegations in the complaint, documents attached to the complaint, and documents, in fact, that are subject to judicial notice. And based on that material. Which would not include, for example, Ms. Orr's statement that she never made this statement. That would not include Ms. Orr's declaration. That's correct. If you choose to consider those other documents beyond the pleadings and matters which are subject to judicial notice, this can be decided as a summary judgment motion. You know, the difficulty with that is that the district judge did decide it as a summary judgment motion. So he did rely on all those other things. That may be the case. But this Court can decide on a motion for judgment on the pleadings for anything in the record that supports that the positive actions should be dismissed as a motion for judgment on the pleadings. The difficulty is if the district judge is only deciding the judgment on the pleadings, then probably he could have given leave to amend. He could have given leave to amend, but here we believe that giving leave to amend would be futile. No matter what facts the plaintiff came forward with, he cannot allege facts sufficient to support a claim for negligence and a claim for misrepresentation. No matter what facts he were to allege, no matter what discovery he would do, it would not change the fact that Tabu unjustifiably relied on the sales advertising representative's statement as to her company's position on the law of disgramblers to make a determination on whether or not to go forward with his business. Now, do you agree that the judge improperly relied on Title Vim and that we should just get over that? Improperly? Relied on or ignored Title Vim and that in regard to the guilty plead, that that's not just positive and we should just move on? Under Title Vim, a guilty plea cannot be conclusive proof of guilt in a civil action. So you do agree? That is correct. However, under Title Vim, guilty plea can be admissible in a civil action as a statement against interest. Well, that's right. But if we're appealing on the pleading, the guilty plea isn't even in the pleading. And with regard to the – and therefore, it just isn't really for us at this point. I think the facts within the guilty plea can be considered because they are subject to judicial notice and can be admissible under statements against interest. But I don't think they're necessary to – I don't think any facts in the guilty plea are necessary to reach the decision that all three causes of action should be dismissed. So essentially, you're saying we should – we should move past the Title Vim issue and get to the merits of the – of the cause of action. Correct. And getting to the merits of the causes of action, as a matter of law, Tabu was unjustified in relying on the statements of Ms. Orth. While Tabu had years of experience in the discrambler business, he sought advice from a woman whom he was negotiating with at arm's length for ad space. The sales representative merely stated her company's position on discramblers. Why is this exactly the situation in the Billy case that – that would support a cause of action, i.e., a circumstance in which, with regard to a specific transaction, a request – it was a request for information and an negligent misrepresentation was made, if it was a negligent misrepresentation, leaving aside Judge Fernandez's was a cause of action? I apologize. I'm having a little bit difficulty. Isn't the Billy case – or, I don't know, or Biley. The Biley case about the accounting. Biley, all right. Correct. Isn't this exactly the circumstance which would fit to be a viable cause of action? That is, a situation in which there is a specific cause of action – I mean, a specific transaction by parties in privy of contracts for a request for information or a legal opinion is made. One is provided, in fact, and that leaves aside a justifiable reliance issue, perhaps. But up until that point, isn't that exactly what the Billy case says is a viable cause of action? No. Under the Biley case, in that case, there was a contract for the professional service at issue, there being accounting. Here, there was no contract for legal services. In fact, there couldn't be because there was no – But the point, as I understand it, of that argument – I mean, they had an example of a legal opinion, which was very close to this one, in which you're dealing with someone on a commercial transaction and you ask their – for their legal opinion about whether this is a viable – a legal transaction. And you get one. It isn't – there's no privy of contracts with a lawyer, but there is with regards to the person that you're requesting. I thought it was exactly on point. In here, in regards to a lawyer situation, because we're at opposite sides of the table and negotiating a deal on opposite sides, I don't think it's reasonable nor justifiable to rely on the advice of a lawyer on the opposite side of a deal, nor do I think it can be as a matter of law, which was established in the BLM case. In regards – going back to the unjustifiability, because they were at the other side of a deal being negotiated with at arm's length, the BLM case established as a matter of law that it is unjustifiable to rely on that advice of the attorney on the other side. And we similarly ask that this Court affirm on the same grounds. In regards to the negligence claim, Mr. Tabot has not and cannot show that a duty was owed to him. In determining duty, it's a matter of – it's a matter of law in which the courts decide. Essential – the court generally considers several factors in determining whether or not a duty exists. Those essentially boil down to two issues, foreseeability and policy. It was unforeseeable as a matter of law that Mr. Tabot would sell illegally altered scramblers with an intent to defraud the cable industry. He never told my client Popular Science. Well, I mean, that's sort of specialist, isn't it? I mean, the many, many ads that are sitting in Popular Science for a cable to scramblers – I mean, I gather that – that they probably had a pretty good idea that the people who are buying and selling these things were not doing so. There weren't people who were buying and selling them in order to sell them to cable companies so they could sell them to customers. There were people who were trying to avoid the – most likely avoid paying the cable companies for the cable. Is that not a pretty good guess? Well, the law is clear that magazines do not have a duty to investigate – That's a different issue because they didn't – they didn't say that. They could have said, fine, we have no duty, we're not going to answer the question. But that's not what they did. Our company – according to what's alleged in the complaint, our company did not have any knowledge regarding what Mr. Tabot intended to do other than selling to scramblers. And it was our company's legal position that selling to scramblers was not per se illegal. Our company did not have any knowledge based on the allegations in the complaint that he intended to do anything illegal with them. And they can be sold to individuals who are not going to use them illegally, correct? Correct. Just for curiosity, is that because you can have extra boxes? I'm just trying to figure out why that is. What would be a legal direct sale use of a cable – of a scrambler? I'm not certain. You can have extra boxes. I think you could have extra boxes. I think you could call the cable company and get your scrambler perhaps hooked on to the cable company so they are, in fact, able to charge you for the shows. But I'm just speculating here. To go back to the Biley case, there's an – I understand what BLM said, but I'm not sure that this file is consistent with Biley, which was a Supreme Court case. There is an example in Biley of a situation in which a lender loaned money to a partnership based on an opinion letter that was provided by the partnership and then sued on the ground that the opinion letter was a negligent misrepresentation. And the court held that the complaint stated the cause of action of observing a legal opinion intended to secure benefit for the client, either monetary or otherwise, must be issued with due care or the attorney who did not act carefully will have reached a duty owed to those they attempted or expected to influence on behalf of their client. This is in the Biley opinion, cited with approval, and it's exactly this situation as far as I can tell, leaving aside the question of whether there was negligent misrepresentation. I guess I would see the difference in being the relationships and the parties here versus the relationship and the parties discussed in the case mentioned in the Biley case. Whereas here, they were at a third party – pardon me – it was a third party in an arm's length negotiation. And the negotiation between a lender and a partnership was an arm's length negotiation. And it seems to me that if you're negotiating an arm's length deal, you cannot give legal advice to somebody on the opposite side of the deal. Except that Biley says otherwise. So then the question is, is the question of whether or not there was negligent misrepresentation here in fact, or was that litigated below? Could it be litigated on the pleading? The decision on whether or not there was negligent misrepresentation. In other words, this issue that we've been discussing as to whether it was not negligent misrepresentation because it wasn't untrue. It had to before at this point. In order for there to have been negligent misrepresentation, Mr. Teboe would have had to justifiably rely on misrepresentation. But that's a different question. The question that Judge Fernandez has been raising, and the one that I want you to address, is whether the issue of whether the statement was untrue, i.e., whether it is in fact legal or not legal to sell these disgramblers is before us at this point. It seems clear to me that the statement that disgramblers is not per se illegal is true. And there's nothing in it. I'm not going to say it wasn't per se. I mean, of course, we don't know exactly what was said at this point because we're dealing on the pleading. But at least in one of these letters that was asked in the past letter, there were some fairly strong statements made, something to the effect of, which was pretty broad. I can't find it. But the statement was not per se illegal. It was broader than that. Our company was unaware that Mr. Tebow planned to illegally alter the disgramblers and intended to defraud the cable industry. Well, he didn't illegally alter them. I mean, he claims he just sent them out of the box. I mean, maybe he bought something that was illegally altered, but there's no evidence that he illegally altered them. In his plea agreement, he states that he did illegally alter them. No, he did not. He did say he illegally altered them. All he said was that he knowingly sold illegally altered things. That doesn't even mean that he knew they were illegal. He just knowingly sold something that was illegally altered. In his plea, it says that the defendant acted with the intent to defraud the cable television industry. Right. It's on page 79 of the excerpts of record. Our client was unaware of that intention, and there's nothing in the complaints or allegations to suggest that our company was aware of that fact. I think you've used more than your time. Thank you very much. Thank you. You used three minutes extra. I will give you a minute to rebuttal. Your Honor, the one thing I would urge the Court to focus on is what the allegations of the complaints say, and under Rule 12, they're supposed to be accepted as true. In that, I have pled, and I also submitted some additional information during the motions that what was happening here is that Time Warner, which was in some relationship with Popular Science, was going around the country urging prosecutors to go after people like Mr. Table. Your Honors have expressed, you know, questions here. Well, isn't there some legal purpose in that? Well, there was no legal purpose as far as Time Warner was concerned. If you had one of these boxes. I mean, again, this is all extra. But Time Warner wasn't related at the time, right? Pardon me? Time Warner was not a related company at the time. Well, we don't know, Judge, and this is the problem we have. Well, I understand. It sounds like a pleading, but it's not. But you can't believe it either for that reason. Well, I would like to have some discovery so I can prove this point, but what was happening is Time Warner was going around the country having U.S. attorneys prosecute people like Ken Table, who were doing nothing more than buying these boxes from a wholesaler and selling them through the magazine. Now, Popular Science knew that or should have known that and should have told Ken Table that. That's my case. They assumed the duty. They could have said nothing. They could have said we're not going to say anything to you. You make your own decisions. No, they didn't do that. They said it's legal. It's legal to advertise and it's legal to sell. That's what this case is about. You've got Time Warner going to the prosecutor saying get that guy. And you've got Popular Science saying send me your money and we'll place your ad. I think we understand your point. Thank you. Thank you, Your Honor. All right. Exciting argument.
judges: Pregerson, Fernandez, Berzon